UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH K. KIMES, CDCR #V-80313, <br><br>　　　　　　　　　　Plaintiff, <br><br>　vs. <br><br>RANDOLPH; MS. ALLEN; MARCUS POLLARD; KATHLEEN ALLISON; SGT DIAZ; K. COWART; R. BARENCHI; HELEN NORRIS; A. BOSIO; P. MEJIA; C. DOMINGO; ALMA MARTINEZ, <br><br>　　　　　　　　　　Defendants. | Case No.: 3:21-cv-0124-CAB-AHG <br><br>**ORDER DISMISSING CLAIMS AND DEFENDANTS PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)(1)** |

**I.    Procedural** History

On January 21, 2021, Kenneth Kimes ("Plaintiff"), currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD") located in San Diego, California, filed a civil rights Complaint ("Compl.") pursuant to 22 U.S.C. § 1983 (*See* ECF No. 1). Plaintiff also filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (*See* ECF No. 2).

///

1

On February 12, 2021, the Court GRANTED Plaintiff's Motion to Proceed IFP and simultaneously DISMISSED his Complaint for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1).  (*See* ECF No. 7.)  Plaintiff was given leave to file an amended complaint in order to correct the deficiencies in his pleading identified in the Court's Order.  (*See id.*)  On March 9, 2021, Plaintiff filed his First Amended Complaint ("FAC").  (*See* ECF No. 8.)

**II.    Sua Sponte Screening per 28 U.S.C. § 1915(e)(2) and § 1915A**

   A.    <u>Standard of Review</u>

As the Court previously informed Plaintiff, because he is a prisoner and is proceeding IFP, his FAC requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

### B. Plaintiff's Allegations

On March 2, 2012, Defendant Barenchi "issued an order for Plaintiff to be given three gluten free meals a day due to Plaintiff being diagnosed with Celiac disease." (FAC at 5.) Barenchi later issued a second identical order on April 5, 2012. (*See id.*) These orders "were issued" to Defendants Norris and Bosto. (*Id.*) Norris and Bosto are "employed as the dieticians directly responsible for ensuring [Plaintiff's] medical diet is healthy." (*Id.*)

Plaintiff alleges Norris and Bosto "allowed" his meals to be "stolen "on February 20, 2019, March 6, 2019 and April 14, 2020. (*Id.*) Plaintiff further claims his meals were also stolen on February 3, 2020 and June 1, 2020. (*See id.*) In addition, he contends that Norris and Bosto have served "Plaintiff his food completely spoiled and rotten" on five occasions from December of 2019 to February of 2020. (*Id.*) Norris and Bosto purportedly served Plaintiff food containing gluten" on January 25, 2020, January 27, 2020, and on April 4, 2020. (*Id.*)

In 2015 and 2016, Barenchi "issued medical chronos stating that Plaintiff has celiac disease and is allowed to purchase gluten free foods such as yogurt, protein powder, produce, fruit, and vegetables from a market vendor at Plaintiff's own expense." (*Id.* at 6.) However, when Plaintiff ordered these items on January 2, 2020, Defendant

Cowart "refused the order and told Plaintiff that he was not allowed to have the order and that there was no medical file/chrono" in Plaintiff's file. (*Id.*)

Plaintiff filed a grievance and claims that Cowart "saw that Plaintiff filed an appeal about the order" and removed Plaintiff's medical chrono from his file. (*Id.*) Plaintiff further claims Cowart and Defendant Pollard had Barenchi "recant his 4 year old medical chrono and issue a new one stating that Plaintiff was now not allowed to order food for his medical diet." (*Id.*)

Plaintiff "wrote to the only approved vendor that was offering medical diet foods/chrono store items and was told that they no longer offer[ed] medical food chrono diet store items." (*Id.*) Plaintiff alleges that he requested "help in getting his order/chrono worked out" from Cowart but Cowart "did not provide any help and actually threatened Plaintiff for filing an appeal." (*Id.*)

Plaintiff alleges Defendants Pollard, Allison, Norris, and Bosto "have been allowing inmates infected with HIV and Hepatitis to work in culinary and handle Plaintiff's food." (*Id.* at 7.) As a result, Plaintiff claims it puts him "in harms way to potentially catch one or both of these viruses by their action." (*Id.*) Plaintiff contends that when he raised these concerns, these Defendants "refused to give any of the kitchen inmates handling Plaintiff's food any type of screening or review to correct this issue." (*Id.*) On five occasions in 2019 and 2020, Plaintiff claims he was "given rotten food that was prepared by these inmates and it caused Plaintiff severe and ongoing medical problems." (*Id.*)

Plaintiff alleges Defendants Mejia, Domingo, and Martinez "tampered with and removed documents from Plaintiff's medical file," along with purportedly "denying Plaintiff access to his medical file. (*Id.* at 8.) In addition, he claims these Defendants, along with Defendant Pollard, are "refusing to list Plaintiff as an 'American with a Disability' who falls under the ADA definition of a person with Celiac disease." (*Id.*)

Plaintiff seeks declaratory relief, injunctive relief, $3,000,000 in compensatory damages, and $3,000,000 in punitive damages. (*See id.* at 10-13.)

### C.  Waived Defendants

In the Court's February 12, 2021 Order, Plaintiff was cautioned that any "[d]efendants not named and any claim not re-alleged in his Amended Complaint will be considered waived." (*See* Feb. 12, 2021 Order, ECF No. 7 at 13 citing S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

In Plaintiff's FAC, he no longer names Defendants Randolph, Allen, or Diaz as Defendants. Accordingly, all claims against these Defendants are deemed waived and they are DISMISSED from this action and the Clerk of Court is DIRECTED to terminate these Defendants from the docket.

### D.  Individual Causation

Plaintiff claims that Defendants Norris and Bosto "allowed" his meals to be stolen" or were somehow responsible for his meals being spoiled on a few occasions over the last eighteen months. (*See* FAC at 5-6.) In a grievance submitted in support of his allegations in his FAC, Plaintiff writes "[f]or the last 3-4 weeks there has been a major increase in medical diet food theft at breakfast" and the "bags are ripped open and one of your kitchen workers is stealing frequently and often from many of the medical diets, not just mine." (FAC at 22; Ex. C, Inmate/Parolee Request for Interview, Item or Service, CDCR Form 22, Dated Feb. 20, 2019.) Staff member Robinson[1], a yard kitchen manager, responded "yes, we tracked who it is and we have given him a write up." (*Id.*)

---

[1] Robinson is not a named Defendant.

5

Plaintiff filed another grievance a few weeks later indicating that his medical diet that morning had been "torn open" and asked to "talk directly." (*Id.* at 24, Inmate/Parolee Request for Interview, Item or Service, CDCR Form 22, Dated March 6, 2019.) Robinson again responded that he "found out who is doing it and gave him a write up." (*Id.*) Nowhere in these grievances does Plaintiff indicate how Defendants Norris or Bosto were at all involved in the alleged theft of medical diets or how they allegedly "allowed" these diets to be stolen. He fails to elaborate with sufficient factual allegations how Norris or Bosto were purportedly responsible for another inmate allegedly stealing from these medical diets in the body of his FAC.

He also alleges that Defendants Pollard, Allison, Norris, and Bosto "have been allowing inmates infected with HIV and Hepatitis to work in culinary and handle Plaintiff's food." (*Id.* at 7.) As a result, Plaintiff claims it puts him "in harm's way to potentially catch one or both of these viruses by their action." (*Id.*) Plaintiff contends that when he raised these concerns, these Defendants "refused to give any of the kitchen inmates handling Plaintiff's food any type of screening or review to correct this issue." (*Id.*, citing Ex. N, ECF No. 8 at 74, Inmate/Parolee Request for Interview, CDCR 22 dated December 29, 2019.) This grievance also shows that Plaintiff raised this issue and it was responded to by "O. Aguilar." (*Id.*) Nowhere in the documents attached to Plaintiff's FAC, and to which he cites in support of his allegations, is there any indication that Defendants Pollard, Allison, Norris, or Bosto were aware of his claims that he was being served food by any inmate with a purportedly contagious disease or that they refused to provide any screening to these inmates.[2]

---

[2] According to CDCR regulations, a "medical clearance shall be required prior to placing an inmate in a food handling assignment." CAL CODE REGS., tit. 15 § 4080.20. None of the named Defendants are alleged to be medical personnel. In addition, CDCR regulations also provide that "[f]ood service correctional officers and correctional cooks shall hold daily inspections of all workers who handle food for cleanliness, open sores, proper clothing, hair nets (covers) or any condition that may contaminate the food." *Id.* Again, none of the named Defendants are alleged to be food service correctional officers or correctional cooks.

The Court finds that Plaintiff's FAC contains no "further factual enhancement" which describes how, or to what extent, Pollard, Allison, Norris, or Bosto became aware of, or were actually aware of, any alleged constitutional violation. "Because vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).

"Causation is, of course, a required element of a § 1983 claim." *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988), citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). There are no factual allegations linking Defendants Pollard, Allison, Norris, or Bosto, with sufficient plausibility, to any of his claims regarding alleged constitutional violations.

Thus, for these reasons, the Court finds that Plaintiff's claims against Pollard, Allison, Norris, or Bosto must be dismissed for failing to state a claim upon which relief may be granted.

E. <u>Eighth Amendment claims</u>

Plaintiff claims that he was denied his gluten free meal on a few occasions and he also received on four occasions in 2019 and 2020, "rotten food that was prepared" by inmates. (*Id.*)

To state a claim for cruel and unusual punishment, however, Plaintiff must allege facts sufficient to show that the conditions of his confinement subjected him to "unquestioned and serious deprivations of basic human needs." *Rhodes v. Chapman*, 452

U.S. 337, 347 (1981); Wilson v. Seiter, 501 U.S. 294, 298-300 (1991). The Eighth Amendment "does not mandate comfortable prisons," and conditions imposed may be "restrictive and even harsh." *Rhodes*, 452 U.S. at 347, 349. Adequate food is a basic human need protected by the Eighth Amendment. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). However, prison food need only be "adequate to maintain health." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993); *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996).

The Ninth Circuit has held that the "sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose." *Foster v. Runnels*, 554 F.3d 807, 812-13 (9th Cir. 2009) (the denial of 16 meals in 23 days is a violation of the Eighth Amendment). Here, Plaintiff claims he was given "spoiled or rotten" meals on five occasions over a period of several months. In addition, Plaintiff's claims that he was unable to purchase food from outside vendors but does not allege that he was prevented from purchasing food from the prison's canteen. These are insufficient allegations to show that he had a "sustained deprivation" of nutrition that would rise to the level of an Eighth Amendment violation.

For these reasons, Plaintiff's Eighth Amendment claims are DISMISSED for failing to state a claim upon which relief may be granted.

F.     Americans with Disabilities Act

Plaintiff alleges Defendants Mejia, Domingo, Martinez, and Pollard are "refusing to list Plaintiff as an 'American with a Disability' who falls under the ADA definition of a person with Celiac disease." (FAC at 8.)

Title II of the ADA bars a public entity from excluding an eligible disabled individual from "participation in a public entity's services, programs, or activities." *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds, cert. dismissed in part sub nom. City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015). To state a claim under Title II of the ADA, Plaintiff must

8

allege: (1) he is an individual with a disability, (2) he is otherwise qualified to participate in or receive the benefit of a public entity's services, programs, or activities, (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity, and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (quoting *Sheehan*, 743 F.3d at 1232).

"A plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA...." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Instead, the proper defendant in an ADA action is the public entity responsible for the alleged discrimination. *U.S. v. Georgia*, 546 U.S. 151, 153 (2006). The term "public entity" includes state prisons. *See Pennsylvania Dept. of Corrs. v. Yeskey*, 524 U.S. at 210 (holding state prisons are public entities under Title II). Thus, to the extent Plaintiff seeks to sue Defendants in their individual capacities under the ADA but does not name any public entity as a party, he fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); § 1915A(b)(1); *Watison,* 668 F.3d at 1112; *Wilhelm,* 680 F.3d at 1121.

And while state prison officials alleged to have acted in their official capacity on behalf of the public entity may be named as parties in an ADA Title II claim seeking injunctive relief, *see Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003); *Perry v. Brevick*, No. 2:21-CV-0065 KJN P, 2021 WL 352374, at *3 (E.D. Cal. Feb. 2, 2021), in order to seek monetary damages, Plaintiff must allege intentional discrimination by the entity under the "deliberate indifference" standard. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon ... the likelihood." *Id.* at 1139. This standard is not met "where a duty to act may simply have been overlooked," but rather "a failure to act must be a result of conduct that is more than

negligent." *Id.; see also Germaine-McIver v. Cty. of Orange*, No. SACV 16-01201-CJC (GJS), 2018 WL 6258896, at *13 (C.D. Cal. Oct. 31, 2018).

As alleged, Plaintiff's FAC plainly fails to state a plausible claim for relief under the ADA. Plaintiff has alleged no facts whatsoever to show he was excluded from participating in any service, program, or activity based upon his disability, nor has he alleged facts showing any discriminatory intent due to or "by reason of" his celiac disease. *See Vos,* 892 F.3d at 1036.

G.  Retaliation claims

Finally, as to Plaintiff's allegations against Defendant Cowart, however, the Court finds his FAC contains plausible First Amendment retaliation claims sufficient to survive the "low threshold" set to withstand the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

H.  Leave to Amend

Because the Court has determined that some of Plaintiff's claims survive the sua sponte screening process, the Court will give Plaintiff the opportunity to either: (1) notify the Court of the intent to proceed with his First Amendment retaliation claims against Defendant Cowart only; or (2) file an amended pleading correcting all the deficiencies of pleading identified by the Court in this Order. Plaintiff must choose one of these options within forty-five (45) days from the date this Order is filed. If Plaintiff chooses to proceed as to his claims against Defendant Cowart only, the Court will issue an Order directing the U.S. Marshal to effect service of his FAC on Defendant Cowart and dismiss the remaining claims and defendants.

III.  **Conclusion and Orders**

For the reasons explained, the Court:

1.  The Court **DISMISSES** Defendants Randolph, Allen, and Diaz from this action. *See Lacey*, 693 F.3d at 928. The Clerk of Court is directed to terminate these Defendants from the Court's docket.

2. The Court **DISMISSES** all claims against Defendants Pollard, Barenchi, Norris, Bosto, Mejia, Domingo, and Martinez for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

3. The Court **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either: (1) Notify the Court of the intention to proceed with the First Amendment retaliation claims against Cowart only; or (2) File an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

**IT IS SO ORDERED**.

Dated: March 17, 2021

Hon. Cathy Ann Bencivengo
United States District Judge